FILED
2022 Sep-26  PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| TAMMY OHNECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00962-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER
## <u>AFFIRMING THE DECISION OF THE COMMISSIONER</u>

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tammy Ohneck filed for review of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability benefits, including widow's benefits. Doc. 1.  Plaintiff Ohneck applied for disability benefits with an alleged onset date of March 11, 2019.  Doc. 7-5 at 3; Doc. 7-7 at 2, 17.  The Commissioner denied Ohneck's claim for benefits.  Doc. 7-3 at 15–29.

Pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties consented to magistrate judge jurisdiction.  Doc. 24.  After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

## ISSUES FOR REVIEW

In this appeal, Plaintiff Ohneck argues that the court should reverse the Commissioner's decision for three reasons: (1) the Administrative Law Judge (ALJ) failed to accord proper weight to the opinion of treating physician Dr. Pascual Herrera without good cause; (2) the ALJ's finding that Ohneck had the "residual functional capacity" (RFC) to perform light work was not supported by substantial evidence; and (3) the ALJ's decision was not based on substantial evidence because the ALJ "relied on Vocational Expert testimony that was not based on a correct or full statement of [Ohneck's] limitations and impairments." Doc. 10 at 2, 34, 38.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505, 416.905.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§ 423(d)(3).

To qualify for widow's benefits under the Social Security Act, the claimant must meet the definition of disability under 20 C.F.R. § 404.1505 and must establish that she is at least 50 years of age and the widow of a wage earner who died fully insured.  20 C.F.R. § 404.335; *see also Sullivan v. Weinberger*, 493 F.2d 855, 857 (5th Cir. 1974) (old Fifth Circuit).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:   (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled.  The ALJ must determine the following:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    if not, whether the claimant has a severe impairment or combination of impairments;

(3)    if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)    if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and

(5)    if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   If the Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs.  *Id.*  So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant.  *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act.  The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.**   With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial

4

evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

## BACKGROUND

### A.    Plaintiff Ohneck's personal and medical history

Plaintiff Ohneck was born on September 29, 1969.  Doc. 7-5 at 3, 5.  She was 49 years old at the time that she initially applied for benefits.  Doc. 7-5 at 5.

As early as 2011, Ohneck had been diagnosed with diabetes and hypertension. Doc. 7-12 at 2.  Ohneck's diabetes was not easily controlled.  Doc. 7-12 at 11.

In January 2015, Ohneck presented to Quality of Life Health Services, Inc. with complaints of diabetes and hypertension.  Doc. 7-9 at 4.  Ohneck's diabetes was managed with insulin and was improving, and her hypertension was stable.  Doc. 7-9 at 4.  Throughout 2015, Ohneck's diabetes and hypertension remained stable and were treated with medication.  Doc. 7-9 at 14, 34, 44, 66, 75.

In January 2016, Ohneck presented to Quality of Life with panic attacks that began after the loss of her husband and caused difficulty functioning; Ohneck reported that the medication Klonopin had been effective in helping her symptoms, but that she had run out.  Doc. 7-9 at 83.  Her condition subsequently improved with medication, including Lexapro.  Doc. 7-9 at 90, 95, 97.  Ohneck's hypertension and diabetes remained basically stable through 2016, though she had tingling in her foot (Doc. 7-9 at 106).  Doc. 7-9 at 97, 113.

On February 18, 2016, Jack Bentley, Jr., PhD, performed a consultative mental health examination in connection with prior disability proceedings.  Doc. 7-

10 at 131.  Dr. Bentley observed that Ohneck began having "significant psychiatric problems" following the death of a family member in November 2015, with the most severe symptoms being recurrent panic attacks.  Doc. 7-10 at 131.  Dr. Bentley opined that Ohneck was a lower-functioning adult who had trouble coping, but that she could manage funds and had a good overall prognosis.  Doc. 7-10 at 132.  Dr. Bentley opined that Ohneck would have marked to severe restrictions in the ability to perform complex work, and would have moderate limitations in the ability to perform simple work—though her restrictions would stem more from her physical conditions than her psychiatric conditions.  Doc. 7-10 at 132.

On February 27, 2016, Dr. Anand Iyer also performed a consultative examination in connection with prior disability proceedings.  Doc. 7-10 at 135.  Ohneck reported diabetic neuropathy in her feet that was worse with prolonged sitting or standing, occasional swelling in her legs, hand pain, shortness of breath, and chest pain.  Doc. 7-10 at 135.  Ohneck had a normal physical exam with full strength and range of motion.  Doc. 7-10 at 136.  Dr. Iyer opined that in her "current condition" Ohneck "may have some impairment" in activities including standing and walking, but that she would have no significant limitation in functions including sitting.  Doc. 7-10 at 137.

In June 2017, Ohneck returned to Quality of Life; her diabetes was stable and managed with insulin.  Doc. 7-9 at 141.  In July 2017, Ohneck presented to Quality

of Life with swelling in her right leg, numbness in her left hand, and a knot on her right leg; Ohneck reported that she had not been taking insulin for a while, and that the swelling began when she resumed taking it. Doc. 7-9 at 151. An adjustment to Ohneck's insulin was recommended. Doc. 7-9 at 151.

In October 2017, Ohneck returned to Quality of Life for diabetes and hypertension; her diabetes was improving, and her hypertension was classified as "moderate." Doc. 7-9 at 160.

In February and March 2018, Ohneck presented to Quality of Life with hypertension, hyperlipidemia, diabetes, gastroesophageal reflux disease, and asthma; her condition was stable. Doc. 7-9 at 171, 182. At a visit in April 2018, Ohneck's hypertension had worsened, so she was prescribed additional medication. Doc. 7-9 at 193. She also complained of neuropathy in her lower legs with a burning sensation. Doc. 7-9 at 193. In May 2018, Ohneck's diabetes medication was adjusted because her blood sugar had been elevated. Doc. 7-9 at 203.

On May 22, 2018, Ohneck presented to the Riverview Regional Medical Center Emergency Department in Gadsden, Alabama, complaining of chest pain and shortness of breath. Doc. 7-10 at 9. She was diagnosed with asthma and advised to follow up with her primary care provider. Doc. 7-10 at 14, 23.

On September 10, 2018, Ohneck went to Quality of Life with worsening diabetes and stable hypertension. Doc. 7-9 at 213. She was directed to take her

diabetes medication as prescribed.  Doc. 7-9 at 222.  When Ohneck returned to Quality of Life in October 2018, her diabetes was improving.  Doc. 7-9 at 225.  Her diabetes was described as "poorly controlled," but had been better since she resumed taking insulin.  Doc. 7-9 at 225.  Ohneck also complained of chronic right shoulder pain that recently had worsened.  Doc. 7-9 at 225.  Imaging had shown a torn rotator cuff; Ohneck was prescribed Gabapentin for pain.  Doc. 7-9 at 225; Doc. 7-10 at 28, 77.

In December 2018, Ohneck returned to the Riverview Emergency Department with chest pain.  Doc. 7-10 at 33.  Ohneck's pain was diagnosed as non-cardiac in nature and she was discharged; an outpatient stress test was recommended.  Doc. 7-10 at 51–52.

On January 10, 2019, Ohneck had an appointment at Integrated Medical Clinic, LLC for intermittent chest pain and palpitations.  Doc. 7-10 at 88.  Cardiac testing was ordered and showed normal results.  Doc. 7-10 at 91, 126–27; Doc. 7-11 at 32.  Ohneck noted that heartburn medication had helped her pain.  Doc. 7-11 at 32.

On January 17, 2019, Ohneck went to Mercy Medical Clinic in Gadsden, with moderate anxiety and depression.  Doc. 7-11 at 15.  Ohneck stated that Lexapro had been helping, though she still had some panic attacks.  Doc. 7-11 at 15–17.  She also reported that she had worsening heartburn.  Doc. 7-11 at 17.

On March 11, 2019, Ohneck presented to Mercy Medical Clinic with pain and swelling in her left leg related to neuropathy.  Doc. 7-11 at 8.

On April 8, 2019, Ohneck returned to Mercy Medical Clinic to have her anxiety medication refilled because it improved her symptoms.  Doc. 7-14 at 31. Ohneck was alert, oriented, cooperative, and had appropriate mood and affect.  Doc. 7-14 at 33.

On April 30, 2019, Ohneck filled out a function report related to her disability proceedings.  Doc. 7-8 at 16.  Ohneck stated that on a normal day she would wake up, make coffee, do activities like color, play cards, or do jigsaw puzzles, "sweep the floors a little at a time" because she could not stand for long, and make "small easy meals."  Doc. 7-8 at 16.  Ohneck stated that she shopped twice a month in stores for 3 to 4 hours at a time.  Doc. 7-8 at 19.  She stated that she visited with her son and daughter-in-law on weekends and made trips to the grocery store, the doctor's office, and sometimes Walmart.  Doc. 7-8 at 20.  Ohneck stated that her impairments affected her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, and complete tasks.  Doc. 7-8 at 21.  She stated that she could walk for about 10 or 15 minutes at a time, could pay attention as "long as I need to," and could follow written and verbal instructions well.  Doc. 7-8 at 21.  She stated that she did not handle stress well, but that she was taking medication to help with her stress.  Doc. 7-8 at 22.

On May 1, 2019, Ohneck's daughter-in-law (Vonda Matthews) filled out a

third-party function report, noting that Ohneck was able to do light cleaning (sweeping only), to color, to do jigsaw puzzles, to play cards, and to prepare easy meals.   Doc. 7-8 at 24.   Multiple other non-medical third parties submitted statements asserting that Ohneck could not work because of her swollen legs, diabetes, high blood pressure, asthma, and COPD.  Doc. 7-8 at 63–65.

On May 28, 2019, Ohneck returned to Quality of Life complaining of diabetes, hypertension, and chest pain.  Doc. 7-12 at 174.  Ohneck reported that she could not work due to leg pain and swelling.  Doc. 7-12 at 174.  Her hypertension was stable.  Doc. 7-12 at 175.  Ohneck had gone to Quality of Life because she was out of insulin.  Doc. 7-12 at 176.  Ohneck reported that she exercised 3 to 4 times per week for 30 minutes.  Doc. 7-12 at 178.

On July 3, 2019, Ohneck returned to Quality of Life for a follow-up appointment related to issues including diabetes, shortness of breath, and musculoskeletal pain.  Doc. 7-13 at 6.  Ohneck reported that she had not been compliant with her diabetes medication, but that her glucose was improving.  Doc. 7-13 at 6.  Ohneck complained of worsening shortness of breath that rendered her unable to walk more than short distances.  Doc. 7-13 at 6.  She also stated that she had new pain and swelling in her left thigh despite the lack of any apparent injury. Doc. 7-13 at 6.

On July 16, 2019, Ohneck returned to Quality of Life complaining of anxiety,

diabetes, and hypertension.  Doc. 7-13 at 19.  Ohneck reported that her anxiety had been worsening, though she did not have diminished interest or pleasure and did not have fatigue.  Doc. 7-13 at 19.  She reported that her anxiety was helped by Lexapro—though she had run out of medication the previous week.  Doc. 7-13 at 19.  Ohneck's diabetes was stable with improving blood sugar and was managed with medication, though her hypertension was worsening—which she attributed in part to anxiety.  Doc. 7-13 at 19, 28.

On July 18, 2019, Ohneck had another appointment at Quality of Life with Dr. Pat (or Pascual) Herrera for diabetes, hypertension, and musculoskeletal pain.  Doc. 7-13 at 33.  Dr. Herrera noted that Ohneck had symptomatic diabetes, recurrent panic disorder, and shoulder pain that affected her mobility and was aggravated by movement.  Doc. 7-13 at 33, 39, 43.  Dr. Herrera did not suggest any kind of major treatment.  Doc. 7-13 at 41.

The same day, Dr. Herrera filled out a physical capacities form for Ohneck.  Doc. 7-10 at 140.  On the form, Dr. Herrera checked boxes indicating that Ohneck could occasionally lift up to 5 pounds and could never lift more than that, had some limitations in reaching, handling, fingering, and feeling, would be off task 50% of an 8-hour day, would miss 20 out of every 30 workdays, could sit in a chair for an hour at a time, could stand for 15 minutes at a time, and would need to lie down or sit with her legs propped above waist level for 4 hours every workday.  Doc. 7-10 at

140.  Dr. Herrera stated that Ohneck's limitations existed back to March 11, 2019, and that her medications caused narcosis as a side effect.  Doc. 7-10 at 140.

On September 4, 2019, Ohneck returned to Quality of Life for issues including diabetes and hypertension.  Doc. 7-13 at 44.  Her diabetes was characterized as "stable" and was managed with diet and medication, though Ohneck had recently had acute episodes of high blood sugar.  Doc. 7-13 at 44.

On October 21, 2019, Ohneck presented at Quality of Life for issues including diabetes and hip pain that was relieved by medication.  Doc. 7-13 at 67.  Ohneck was compliant with her medication, and her diabetes was managed with diet and insulin.  Doc. 7-13 at 67.  Imaging showed no acute injury of Ohneck's hip.  Doc. 7-13 at 79.

On November 18, 2019, Ohneck attended a psychiatric appointment at which she presented normally and stated that she was "okay," that Lexapro helped her depression, and that she had only recently become more depressed as she neared the anniversary of her husband's death.  Doc. 7-11 at 113–14.  She still reported panic attacks.  Doc. 7-11 at 113–14.  She did not meet the criteria for serious mental illness. Doc. 7-11 at 115.

On December 10, 2019, Ohneck had a follow-up appointment at Quality of Life for her diabetes, hypertension, and COPD.  Doc. 7-13 at 80.  Her diabetes was classified as "stable" and was managed with diet and medication; Ohneck also

reported making lifestyle changes, including increased physical activity.  Doc. 7-13 at 80.  Ohneck's hypertension was stable and managed with medication.  Doc. 7-13 at 80, 89.  Additionally, Ohneck was prescribed medication and stretching for her shoulder pain and arthritis.  Doc. 7-13 at 89.

In January 2020, Ohneck presented to Quality of Life with issues including hypertension, diabetes, hyperlipidemia, and anxiety.  Doc. 7-13 at 97, 114.  Ohneck's hypertension was worsening but still was managed with medication.  Doc. 7-13 at 97, 103, 114.  Her diabetes was "improving" and was managed with diet and insulin.  Doc. 7-13 at 97, 114.  Ohneck's anxiety had improved, and she requested a refill of Lexapro because it had been effective in treating her anxiety.  Doc. 7-13 at 97–98.

In April 2020, Ohneck returned to Quality of Life for diabetes, hypertension, hyperlipidemia, anxiety, musculoskeletal pain, and COPD.  Doc. 7-14 at 2.  Ohneck's diabetes continued to be managed with diet and medication.  Doc. 7-14 at 2, 11.  Her hypertension was stable.  Doc. 7-14 at 2.  Ohneck reported that her anxiety was making functioning "somewhat difficult," though her anxiety was responsive to medication.  Doc. 7-14 at 2–3.  She stated that her anxiety was related to traumatic memories, and that she was seeking counseling.  Doc. 7-14 at 3.  Ohneck reported pain in her legs at a level of 6 out of 10 that occurred "intermittently" and was "worsening," but reported that the pain was relieved by massage and pain

14

medication.  Doc. 7-14 at 3.  She was directed to perform daily stretching exercises.  Doc. 7-14 at 12.

In May 2020, Ohneck presented to Quality of Life with acute intermittent back pain aggravated by movement.  Doc. 7-14 at 16.  Ohneck's diabetes was stable and managed with diet and medication.  Doc. 7-14 at 16.

In the fall of 2020, Ohneck received mental health care at Quality of Life for moderate depression, anxiety, and increasing panic attacks; treatment notes indicate that Ohneck reported that Lexapro previously had helped her symptoms, but had stopped helping.  Doc. 7-4 at 2–8, 20–26.  Ohneck also sought medical care at Quality of Life for diabetes, COPD, and hypertension.  Doc. 7-4 at 9.  Her diabetes was noted to be "improving" in October 2020, but "getting worse" in November 2020; her hypertension was "stable."  Doc. 7-4 at 9, 47.

On November 30, 2020, Ohneck presented to the Riverview Emergency Department with chest pain; Ohneck was sent home with instructions to continue with home medication and to follow up if her symptoms worsened.  Doc. 7-3 at 62.

B.    **Social Security proceedings**

1.    **Initial application and denial of benefits**

In March 2019, Ohneck filed an application for supplemental security income (SSI) benefits, alleging a disability onset date of March 11, 2019.  Doc. 7-5 at 3; Doc. 7-7 at 2.  Ohneck alleged impairments of diabetes, asthma, high cholesterol,

high blood pressure, neuropathy, anxiety, and chest pains.  Doc. 7-5 at 5–6.

In May 2019, Ohneck's disability claim was initially denied because, based on the evidence presented, Ohneck was not disabled.  Doc. 7-5 at 3, 19; Doc. 7-6 at 2.  Dr. Robert Estock opined that Ohneck's mental impairments did not cause severe limitations, and that her medication was helping with her symptoms.  Doc. 7-5 at 12–13.  Dr. Thomas Amason opined that Ohneck had certain limitations, including in lifting, sitting, walking, or standing more than 6 hours in an 8-hour workday, and reaching overhead on the right side, all of which amounted to an ability to perform light work.  Doc. 7-5 at 14–19.

On June 26, 2019, Ohneck requested a hearing with an ALJ.  Doc. 7-6 at 10, 52.

On May 26, 2020, Ohneck filed an application for widow's benefits.  Doc. 7-7 at 17.

## 2.    ALJ hearing

On July 6, 2020, the ALJ conducted a telephonic hearing to determine if Ohneck was disabled and entitled to benefits.  Doc. 7-4 at 77–79.  Ohneck's counsel confirmed that Ohneck's alleged disability onset date was March 11, 2019.  Doc. 7-4 at 81.

At the hearing, Ohneck testified that she had an eighth-grade education, had trouble reading, and could not read a newspaper.  Doc. 7-4 at 82.  Ohneck testified

that she had left previous jobs because of pain in her legs and arms, such that she "couldn't lift stuff" and "could hardly walk," and because she could not handle being around a lot of people.  Doc. 7-4 at 83.  Ohneck testified that at previous jobs she had to miss shifts and leave early 2 or 3 times per week because of pain caused by her conditions, and once had to miss 3 weeks of work.  Doc. 7-4 at 83.  Ohneck stated that she could not lift a gallon of milk because of shoulder pain and numbness in her hands caused by diabetes.  Doc. 7-4 at 83–84.  Ohneck testified that she could not lift her arm at all because of her rotator cuff.  Doc. 7-4 at 84.

Ohneck testified that her diabetes was bad, that she had "really high" blood sugar, and that she was taking medication but "nothing's been working."  Doc. 7-4 at 85.  She stated that, if her blood sugar were high, she would become sleepy or tired (especially if she ate), and she also had headaches and blurred vision.  Doc. 7-4 at 86.  Ohneck testified that she had swelling in her legs but did not know why.  Doc. 7-4 at 86.  She stated that she "can't stand for people to be around [her]" and did not like to be near crowds.  Doc. 7-4 at 86.  She stated that she took medication for her "nerves," but they did not help, and stated that she had "real bad panic attacks" 2 to 3 times per day and did not know what caused them.  Doc. 7-4 at 87.  She stated that, "by the end of the day," she felt like she was "going to die."  Doc. 7-4 at 87.

Ohneck stated that she bathed and dressed about half the time because she

often felt "down" and did not "want to go outside" because she would panic.  Doc. 7-4 at 88.  Ohneck testified that she had trouble dressing.  Doc. 7-4 at 88.  She testified that she lived alone, and that it took her all day to do household chores because she had to sit down and rest after 15 minutes.  Doc. 7-4 at 88–89.  Ohneck testified that she cooked her meals, but used the microwave because swelling in her legs from diabetes caused standing to be painful.  Doc. 7-4 at 89–90.  She stated that she could only stand for about 15 minutes at a time.  Doc. 7-4 at 90.  She also stated that she tended to drop objects.  Doc. 7-4 at 90.

A vocational expert (VE), Stephen Cosgrove, testified that a hypothetical individual of Ohneck's age, education, work experience, and RFC (residual functional capacity) would not be able to perform Ohneck's past relevant work.  Doc. 7-4 at 91, 94.  However, VE Cosgrove testified that such a hypothetical individual could perform other jobs that existed in significant numbers in the national economy, including routing clerk, ticket seller, and office helper.  Doc. 7-4 at 94–95.  Cosgrove testified that a hypothetical individual could perform those jobs even if the person was limited to understanding, remembering, and carrying out simple instructions and only occasional interaction with coworkers, supervisors, and the general public.  Doc. 7-4 at 95.  Cosgrove testified that being off task for 5% or more of the day and consistent absenteeism of 2 or more days per month would preclude employment.  Doc. 7-4 at 97.

18

### 3.   ALJ decision

On November 30, 2020, the ALJ entered an unfavorable decision.  Doc. 7-3 at 15–29.  The ALJ found that Ohneck "has not been under a disability within the meaning of the Social Security Act at any time through" the date of the decision.  Doc. 7-3 at 19.

In the decision, the ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178).  Doc. 7-3 at 19–23.  In light of Ohneck's application for disabled widow's benefits, the ALJ noted that Ohneck was the unmarried widow of a deceased insured worker and had attained the age of 50, and consequently that she "met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act."  Doc. 70-3 at 20.  The ALJ found that Ohneck had not engaged in substantial gainful activity since March 11, 2019, the alleged disability onset date.  Doc. 7-3 at 21.  The ALJ also found that Ohneck had severe impairments of "diabetes mellitus with neuropathy, hypertension, asthma, and torn right shoulder rotator cuff."  Doc. 7-3 at 21.

The ALJ found that Ohneck had a history of anxiety and panic disorder, but that her "medically determinable mental impairments of anxiety and panic disorder, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe."

Doc. 7-3 at 21.  The ALJ determined that Ohneck did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations.  Doc. 7-3 at 23.

The ALJ also determined Ohneck's RFC, finding that Ohneck had the capacity to perform light work except that she could not reach overhead on the right side, could not climb ladders, ropes, or scaffolds, could frequently climb ramps and stairs, could frequently stoop, kneel, crouch, and crawl, and could have occasional exposure to extreme temperatures, humidity, and pulmonary irritants.  Doc. 7-3 at 23.

The ALJ considered all of Ohneck's symptoms and the extent to which they reasonably could be accepted as consistent with the evidence, according to the requirements of 20 C.F.R. §§ 404.1529, 416.929 and SSR (Social Security Ruling) 16-3p.  Doc. 7-3 at 23.  The ALJ also considered medical opinions and prior administrative medical findings.  Doc. 7-3 at 23.

In assessing Ohneck's RFC and the extent to which Ohneck's symptoms limited her function, the ALJ's decision stated that the ALJ "must follow" the required "two-step process":   (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

determine the extent to which they limit the claimant's work-related activities." Doc. 7-3 at 23–24.

The ALJ summarized Ohneck's hearing testimony, noting that she indicated that she could not work because her diabetic neuropathy and torn rotator cuff rendered her unable to walk or lift objects, required her to miss work due to pain, and caused headaches and blurred vision, while her medication caused drowsiness. Doc. 7-3 at 24.

The ALJ found that Ohneck's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Ohneck's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Doc. 7-3 at 24. The ALJ found that Ohneck did suffer from diabetes with neuropathy, asthma, and hypertension, but that those conditions were "well controlled with minimal, if any, complications." Doc. 7-3 at 24.

In making that finding, the ALJ found that Ohneck's medical records showed "normal and conservative treatment" for her conditions, and that Ohneck did not complain of neuropathy until 2018 and continued reporting that she exercised for 30 minutes 3 to 4 times per week. Doc. 7-3 at 24. The ALJ found that Ohneck did have a flare-up of neuropathy in April 2020, but reported that it was intermittent and relieved by massage and medication, while her condition remained stable. Doc. 7-3

at 25.  The ALJ found that "the evidence of record reflects very few episodes of continuous and limiting complications," showed no end organ damage, showed that Ohneck's impairments and symptoms were well controlled with medication, and showed that Ohneck's impairments did not prevent her from completing activities of daily living with few limitations.  Doc. 7-3 at 25.  Likewise, the ALJ found that the record did not show disabling symptoms related to Ohneck's torn rotator cuff because she received conservative treatment including a recommendation of daily exercises.  Doc. 7-3 at 25.  In sum, the ALJ found that Ohneck "retains the ability to work on a sustained basis with the above stated residual functional capacity."  Doc. 7-3 at 25.

The ALJ stated that the ALJ "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources."  Doc. 7-3 at 25.  The ALJ found the opinions of the non-examining state agency physicians persuasive, as they were based on, and consistent with, the record evidence.  Doc. 7-3 at 26.

The ALJ found the opinion of Dr. Pat Herrera unpersuasive.  Doc. 7-3 at 26.  The ALJ gave a detailed summary of Dr. Herrera's opinion, then found that the opinion was inconsistent with the record as a whole—including Ohneck's testimony and reports—and with Dr. Herrera's own treatment notes, which showed basically normal examinations and conservative treatment.  Doc. 7-3 at 26.

The ALJ also found the opinions of consultative examiners Dr. Iyer and Dr. Bentley unpersuasive, finding that they were "informative," but of "little value" because they had "little to no support in the current relevant evidence" and were conducted years prior to the alleged disability onset date. Doc. 7-3 at 27. The ALJ's decision stated that the ALJ also reviewed and considered evidence in the record from non-medical sources. Doc. 7-3 at 27.

The ALJ found that the RFC was supported by the evidence because "the record demonstrates that the claimant has some limitations," but the RFC "provides sufficient accommodations to not aggravate those symptoms and to allow her to engage in work activity on a sustained basis." Doc. 7-3 at 27.

The ALJ found further that Ohneck was not able to perform any of her past relevant work. Doc. 7-3 at 27. However, based on the vocational expert's testimony, the ALJ found that—considering Ohneck's age, education, work experience, and RFC—there existed jobs in significant numbers in the national economy that Ohneck could perform. Doc. 7-3 at 28. Those jobs included routing clerk, ticket seller, and office helper. Doc. 7-3 at 28. The ALJ found that Ohneck "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Doc. 7-3 at 28–29.

Accordingly, the ALJ found that Ohneck had not been disabled under the Social Security Act from March 11, 2019, through the date of the decision. Doc. 7-

3 at 29.

### 4.    Appeals Council decision

Ohneck requested that the SSA Appeals Council review the ALJ's decision. Doc. 7-3 at 2; Doc. 7-6 at 57–58.  Ohneck also submitted additional evidence to the Appeals Council, primarily consisting of medical records that postdated the ALJ's decision, as well as a mental health source statement filled out by Dr. Christopher Randolph.  Doc. 7-3 at 3, 8–9.

On June 30, 2021, the Appeals Council denied Ohneck's request for review, finding no reason to review the ALJ's decision.  Doc. 7-3 at 2.  The Appeals Council did not exhibit Ohneck's additional evidence, finding that the evidence did not "show a reasonable probability that it would change the outcome of the decision." Doc. 7-3 at 3.  Because the Appeals Council found no reason to review the ALJ's opinion, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper legal standards.

**I.    The ALJ evaluated the opinion of treating physician Dr. Pat Herrera according to the proper legal standards, and substantial evidence supported the ALJ's decision to find Dr. Herrera's opinion unpersuasive.**

The ALJ evaluated the opinion of Dr. Pat Herrera according to the proper legal

standards, and the ALJ's decision to find Dr. Herrera's opinion unpersuasive was supported by substantial evidence.  In her briefing, Plaintiff Ohneck argues that the ALJ was required to give the opinion of Dr. Herrera, a treating physician, considerable or substantial weight under the Eleventh Circuit's "treating physician rule" unless good cause was shown to the contrary, and that Dr. Herrera's opinion was well supported by the record.  Doc. 10 at 28–34; Doc. 12 at 2–8.  Ohneck argues that the treating physician rule remains in effect, even though the SSA has promulgated new regulations regarding the consideration of medical opinions.  Doc. 10 at 29–34; Doc. 12 at 2–8; Doc. 13.

The SSA has revised its regulations on the evaluation of medical opinions. Under the new regulations, for an application filed on or after March 27, 2017 (like the application in this case), an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including the opinion of a treating physician.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Instead, the ALJ considers the persuasiveness of each medical opinion using the following five factors:  (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing that the medical source has familiarity with other evidence or an understanding of the SSA's policies

and evidentiary requirements.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors, and the ALJ must explain how the ALJ considered those factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "Supportability" requires an ALJ to consider that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" requires an ALJ to consider that "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ may explain how the ALJ considered the other factors, but the ALJ is not required to do so.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Historically, the Eleventh Circuit's treating physician rule required that an ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation marks and citation omitted).

However, the Eleventh Circuit recently has held that the promulgation of 20

C.F.R. § 404.1520c did not exceed the Commissioner's statutory authority, and that the regulation was not arbitrary and capricious. *Harner v. Social Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022). Consequently, the Eleventh Circuit held that 20 C.F.R. § 404.1520c abrogated the treating physician rule. *Id.* at 898.

In *Harner*, the Eleventh Circuit specifically stated that, because section 404.1520c "forbids administrative law judges from 'defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s),'" an ALJ evaluating a disability claim filed after the effective date of 20 C.F.R. § 404.1520c does "not err by declining to give more weight to the medical opinions of [a claimant's] treating physician[]." *Id.* at 898 (quoting 20 C.F.R. § 404.1520c(a)) (alterations in original).

Accordingly, under *Harner*, the ALJ in this case did not err by failing to give considerable weight to the opinion of Dr. Herrera under the now-abrogated treating physician rule. *See also* Doc. 25 (Commissioner's notice of supplemental authority regarding *Harner*).

Because Ohneck has not argued that the ALJ erred in evaluating Dr. Herrera's opinion under the new, revised regulations, any argument that the ALJ incorrectly applied those regulations is abandoned.[1]

---

[1] *See, e.g.*, *Sapuppo v. Allstate Floridian Ins. Co*., 739 F.3d 678, 681 (11th Cir. 2014); *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

But, even if any such argument were not abandoned, the ALJ properly evaluated Dr. Herrera's opinion according to the applicable regulations.  The ALJ was not required to give considerable weight to Dr. Herrera's opinion.  *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather, the ALJ had to consider and explain the supportability and consistency of Dr. Herrera's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Here, the ALJ's decision shows that the ALJ properly considered and explained the lack of supportability and consistency in Dr. Herrera's opinion.

The ALJ found that Dr. Herrera's opinion was inconsistent with both the record as a whole and Dr. Herrera's own records.  Doc. 7-3 at 26.  The ALJ found that no treating physician—including Dr. Herrera—placed limitations on Ohneck based on her impairments.  Doc. 7-3 at 26.  Thus, the ALJ considered and explained that Dr. Herrera's opinion was not supported by relevant objective evidence and explanations (*see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)), and was not consistent with evidence from other sources (*see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

In addition, substantial evidence supported the ALJ's findings regarding the lack of supportability and consistency with respect to Dr. Herrera's opinion, and the ALJ's decision to find Dr. Herrera's opinion unpersuasive.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c). Dr. Herrera's opinion provided for extreme

limitations, including an opinion statement that Ohneck would be off task 50% of each workday and would miss 20 out of every 30 workdays.  Doc. 7-10 at 140. However, nothing in Dr. Herrera's treatment notes from his examination of Ohneck reveals a basis for such extreme restrictions; his examination was largely normal, did not focus strongly on psychological issues, and did not recommend new or major treatment.  Doc. 7-13 at 33–43.  Ohneck's other medical records also do not reveal a basis for such extreme limitations.  For instance, even the mental health source statement from Dr. Randolph that Ohneck submitted to the Appeals Council only opined that Ohneck would be off task about 20% of the day and would miss 4 to 5 out of every 30 workdays.  Doc. 7-3 at 8.

In particular (as discussed above), the ALJ found that Dr. Herrera's opinion was not only "inconsistent with the record as a whole, including [Ohneck's] testimony and reports, but also inconsistent with Dr. Herrera's own treatment notes." Doc. 7-3 at 26.  The ALJ found that, "overall, Dr. Herrera's treatment notes show normal examination of [Ohneck] despite exacerbations of some symptoms and conservative treatment of these impairments and related symptoms."  Doc. 7-3 at 26. The ALJ also found that "no treating physician, including Dr. Herrera, placed any continuing limitation on [Ohneck] in his or her treatment notes."  Doc. 7-3 at 26.

Because the severity of the limitations expressed in Dr. Herrera's opinion was not supported by Dr. Herrera's own treatment notes and was not consistent with the

record evidence, there is sufficient evidence that a reasonable person would find adequate to support the ALJ's finding that Dr. Herrera's opinion was unpersuasive. *See Crawford*, 363 F.3d at 1158. Thus, substantial evidence supported the ALJ's decision. *See id.*

## II.   The ALJ's finding that Ohneck has the RFC to perform light work was supported by substantial evidence and was made according to SSR 96-8p.

The ALJ properly found that Ohneck has the RFC (residual functional capacity) to perform light work with some additional limitations. In her briefing, Ohneck argues that, were she limited to sedentary work, she would be entitled to benefits under the applicable Social Security grids. Doc. 10 at 34; Doc. 12 at 8. Ohneck argues that the ALJ's RFC finding is "simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." Doc. 10 at 35. Further, she argues that substantial evidence does not support the ALJ's finding that "the claimant can perform sustained work activities," and that the ALJ did not properly consider and rely on medical opinions. Doc. 10 at 36; Doc. 12 at 9–12.

The ALJ's finding that Ohneck has the RFC to perform light work was made according to SSR 96-8p and was supported by substantial evidence. As a preliminary matter, the applicable regulations refute Ohneck's argument that the ALJ erred in determining Ohneck's RFC because the RFC "must be supported by

the residual functional capacity assessment of a treating physician."  Doc. 10 at 37.

The applicable regulations and caselaw make clear that a claimant's RFC is an issue

"reserved to the Commissioner," and not any physician.  20 C.F.R. §§ 404.1527(d),

416.927(d); *see also Bell v. Bowen*, 796 F.2d 1350, 1353–54 (11th Cir. 1986)

(recognizing that, although a claimant's physician may state his opinion that the

claimant is "disabled" or "unable to work," "the agency will nevertheless determine

disability based upon the medical findings and other evidence").

Citing SSR 96-8p, the ALJ's decision stated that in making the RFC finding

the ALJ "must consider all of the claimant's impairments, including impairments

that are not severe."  Doc. 7-3 at 20 (citing 20 C.F.R. §§ 404.1520(e), 404.1545,

416.920(e), 416.945; SSR 96-8p).  The ALJ considers a claimant's "ability to meet

the physical, mental, sensory, and other requirements of work."   20 C.F.R.

§ 404.1545(a)(4).   A claimant's RFC is the most a claimant can do despite

limitations, not the least.  20 C.F.R § 404.1545(a)(1); *see* SSR 96-8p, 1996 WL

374184 (July 2, 1996).

An ALJ must examine all relevant medical and other evidence, including "any

statements about what [the claimant] can still do that have been provided by medical

sources" and "descriptions and observations" of limitations by the claimant, her

family, her neighbors, her friends, or others, including limitations resulting from

pain.  20 C.F.R. § 404.1545(a)(3).  The RFC finding must include a narrative

discussion describing how the evidence supports the ALJ's determination, citing specific medical facts and non-medical evidence and discussing the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

Here, after determining that Ohneck had both severe and non-severe impairments (Doc. 7-3 at 21–23), the ALJ determined that Ohneck had an RFC that allowed for light work except that she could not reach overhead on the right side, could not climb ladders, ropes, or scaffolds, could frequently climb ramps and stairs, could frequently stoop, kneel, crouch, and crawl, and could have occasional exposure to extreme temperatures, humidity, and pulmonary irritants.  Doc. 7-3 at 23.

Consistent with SSR 96-8p, in making that finding, the ALJ considered all of Ohneck's symptoms to the extent that they reasonably could be accepted as consistent with the evidence.  Doc. 7-3 at 23.  The ALJ summarized and considered Ohneck's testimony about her limitations, and also considered Ohneck's medical records, the medical source opinions in the record, and the evidence in the record from non-medical sources.  Doc. 7-3 at 24–27.  The ALJ discussed in narrative form, while citing specific medical facts, how Ohneck's medical records undermined her testimony because they showed a history of "normal and conservative treatment," an ability to exercise, pain relieved by massage and pain medication, and a general

32

lack of continuous limiting complications.  Doc. 7-3 at 25.  The ALJ also placed limitations in the RFC that accommodated Ohneck's limitations to the extent that they were supported by the record evidence—for example, a limitation on overhead reaching on the right side.

In short, the ALJ's RFC determination shows a consideration of all the evidence of Ohneck's condition.   As the Eleventh Circuit has stated in an unpublished opinion, an ALJ is not required "to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow [the court] to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Commissioner of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

In addition, the ALJ's RFC determination was supported by substantial evidence.  According to the applicable regulation, "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*  "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the Commissioner] determine[s] that

he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

Here, the ALJ found that Ohneck could perform light work, with some additional limitations. Doc. 7-3 at 24. The ALJ found that, while Ohneck did suffer from diabetes with neuropathy, asthma, and hypertension, those conditions were "well controlled with minimal, if any, complications." Doc. 7-3 at 24.

As explained above, substantial evidence supported the ALJ's decision to find unpersuasive the medical source opinion of Dr. Herrera. *See supra* Part I.

Moreover, the record evidence does not show consistent disabling limitations arising from Ohneck's conditions. Ohneck's treatment records show that her diabetes and hypertension were consistently classified as "stable" and were treated conservatively with medication. *See, e.g.*, Doc. 7-9 at 14, 34, 44, 66, 75; Doc. 7-9 at 97, 113; Doc. 7-13 at 44, 80, 89; Doc. 7-14 at 2. While Ohneck did report pain and swelling in her legs, she classified those conditions as intermittent and stated that they were relieved by massage and medication. Doc. 7-14 at 3. Ohneck stated multiple times in her medical records that she exercised, and she was recommended to incorporate exercise and stretching into her management of her symptoms. Doc. 7-3 at 24–25; Doc. 7-12 at 178; Doc. 7-13 at 80; Doc. 7-14 at 12. Ohneck consistently reported that Lexapro helped her anxiety. *See, e.g.*, Doc. 7-9 at 90, 95, 97; Doc. 7-11 at 15–17; Doc. 7-13 at 19, 97–98. Ohneck also provided testimony

that she could shop for 3 to 4 hours, which undermines her assertions that she could not be on her feet and could not be around people.  Doc. 7-8 at 19.  As for Ohneck's torn rotator cuff and inability to lift her right arm (*see* Doc. 7-4 at 84), the ALJ accounted for her pain and limitation by including in the RFC finding an inability to reach overhead.  Doc. 7-3.  All of this evidence supports the ALJ's finding that Ohneck could perform light work with some additional restrictions.

In sum, there is sufficient evidence in the record based on which a reasonable person would accept the ALJ's RFC finding.  *See Crawford*, 363 F.3d at 1158 (where there is substantial evidence, a court must affirm the ALJ's decision, "[e]ven if the evidence preponderates against the Commissioner's findings" (quoting *Martin*, 894 F.2d at 1529)).  Accordingly, substantial evidence supported the ALJ's decision. And, because substantial evidence supported the ALJ's determination that Ohneck could perform light work with some additional limitations, there is no reason to address Ohneck's argument that, if she could only perform sedentary work, the Social Security grids would lead to a finding of disability.  *See* Doc. 10 at 34.

## III.   The ALJ properly posed hypothetical questions to the vocational expert such that the ALJ's decision was based on substantial evidence.

The ALJ posed proper hypothetical questions to the vocational expert such that the ALJ's decision was based on substantial evidence.  In her briefing, Ohneck argues that the ALJ's decision was not based on substantial evidence because the ALJ disregarded the opinion of Dr. Herrera and "relied on Vocational Expert

testimony that was not based on a correct or full statement of claimant's limitations and impairments."  Doc. 10 at 38; Doc. 12 at 12–13.  Ohneck argues that "the testimony of the [vocational expert] was not substantial evidence of ability to work because the hypothetical question relied upon did not accurately state [Ohneck's] pain level or [her] residual functional capacity."  Doc. 10 at 38.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Winschel*, 631 F.3d at 1180.  But, if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in a hypothetical question to the vocational expert.  *Crawford*, 363 F.3d at 1161.

In this case, the ALJ posed hypothetical questions to the vocational expert—consistent with the ALJ's RFC determination—about an individual who could perform light work except that she could not reach overhead on the right side, could not climb ladders, ropes, or scaffolds, could frequently climb ramps and stairs, could frequently stoop, kneel, crouch, and crawl, and could have occasional exposure to extreme temperatures, humidity, and pulmonary irritants.  Doc.7-4 at 94.  The ALJ also included in the hypothetical questioning limits in understanding and interacting with people.  Doc. 7-4 at 95.

As noted above, the hypothetical limitations that the ALJ posed to the

36

vocational expert accurately reflect the ALJ's determination of Ohneck's RFC (*see* Doc. 7-3 at 23).  Consequently, the ALJ was not required to ask the vocational expert about any limitation that the ALJ had not found in the RFC determination—e.g., any other limitation that Ohneck had alleged, or that Dr. Herrera had included in his opinion (*see supra* Part I), but that was not included in the ALJ's RFC determination. *See Crawford*, 363 F.3d at 1161.  Thus, the ALJ properly relied on the VE's testimony to find that jobs existed that Ohneck could perform, and that Ohneck was not disabled.

In the end, "[b]ased on the testimony of the vocational expert," the ALJ found that, "considering [Ohneck's] age, education, work experience, and residual functional capacity, [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Doc. 7-3 at 29. Substantial evidence supported the ALJ's reliance on the vocational expert's testimony, and the ALJ's finding that Ohneck was not disabled under the Social Security Act.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the court **AFFIRMS** the Commissioner's decision.  The court separately will enter final

judgment.

      **DONE** and **ORDERED** this September 26, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE